IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| IN THE MATTER OF THE SEARCH OF:<br><br>Black Samsung Cell Phone assigned call number (406) 396-7911. | MJ 25- 02   -H-JTJ |
|---|---|

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH
WARRANT

I, Monte Shaide, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and am currently assigned to the Missoula Resident Agency in Missoula, Montana. I have been employed as an SA for over 27 years, and in this time, I have had extensive training and experience in conducting violent-crime related investigations, including criminal enterprise investigations. For over nine years, I served on the Pierce County Violent Crime Task Force in Tacoma, Washington, and the Puget Sound Task Force in Seattle, Washington. For over 12 years, I was a member of the FBI Montana Regional Violent Crime Task Force (MRVCTF), which specializes in targeting habitual violent offenders, dismantling violent

criminal enterprises, and tracking fugitives. From 2019-2020, I served as a Supervisory Special Agent for the National Tactical Training Unit in Quantico, Virginia, providing national-level program management of the FBI's Field Special Weapons and Tactics (SWAT) program and SWAT sub-programs. Management included certification of SWAT Agents and core skills, specialized training of the SWAT teams, and planning, assistance, and oversight during multiple-office SWAT deployments involving high-risk warrant service, tactical surveillance interdiction, and hostage rescue. In September of 2020, I returned to the Missoula Resident Agency to resume my duties as an SA assigned to the MRVCTF.

2. I am assigned to the case summarized in this affidavit, and the information contained in this affidavit is based on my own observation, training, and experience, and, where noted, information provided to me by other law enforcement officers. I have not included all the facts known to me, but rather only those facts necessary to establish probable cause.

3. This affidavit is in support of a search warrant application for the cell phone of David Alan Moorse relating to Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846, and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1).

## PROPERTY TO BE SEARCHED

4.      This affidavit is made in support of an application for a search warrant to search a Black Samsung Cell Phone assigned call number (406) 396-7911.

## PROBABLE CAUSE

5.      On September 18, 2024, I received information from a Confidential Source that David Moorse was currently residing in Helena, Montana, and traveling back and forth to Missoula, Montana, distributing large quantities of fentanyl. Moorse stated he had a "good hookup" in Missoula and had recently distributed $3,000 worth of fentanyl pills in Helena.

6.      In December 2024 and January 2025, I received information from two separate sources that AJ Andrade and Brittany French were traveling from Missoula to Helena to pick up large amounts of fentanyl powder from Moorse. The informants communicated with Moorse through Facebook Messenger or by reaching out to Moorse on his cell phone at 406-396-7911. One source had received photos from Moorse indicating he had a large quantity of fentanyl powder.

7.      I am very familiar with Moorse. Moorse has been indexed in numerous FBI MRVCTF cases because he was a persistent felony offender with an extensive criminal history. In addition, a local record check revealed Moorse was stopped and identified on June 23, 2024, with Taylor Penny and Jacob Foley by the Missoula Police Department (MPD) during a traffic stop. Penny is a known drug trafficker who was arrested by the FBI MRVCTF and pleaded guilty in U.S. District Court for Possession with Intent to Distribute

Controlled Substances in violation of 21 U.S.C. § 841(a0(1). Penny was responsible for distributing thousands of fentanyl pills in the Missoula area and had an extensive distribution network. Foley also is known to be involved in the distribution of controlled substances and was arrested on an outstanding warrant during the traffic stop by the MPD. Moorse was contacted, identified, and subsequently released by the Missoula PD.

8. An FBI NCIC report revealed Moorse has 10 federal and state felony convictions for various offenses to include Burglary, Felon in Possession of a Firearm, Escape, Criminal Possession of Dangerous Drugs, Criminal Endangerment, Criminal Mischief, and numerous Probation Violations spanning over a 20-year period.

9. On December 16, 2024, FBI Task Force Officer Shawn Heidrick and I attempted to locate Moorse. Moorse is on supervised probation with Montana Department of Corrections until 2048. Moorse had been checking in with Probation and Parole by phone but provided a fictitious address in Helena that did not exist. All attempts by Probation and Parole to contact Moorse were unsuccessful.

10. On December 23, 2024, a felony bench warrant was issued out of Missoula County, Montana, for Moorse's arrest because Moorse failed to maintain contact with his probation officer and his whereabouts were unknown.

11. On January 8, 2025, a search warrant requesting cell site location data was authorized by United States Magistrate Judge Kathleen DeSoto, United States District Court, District of Montana for Moorse's cell phone, 406 396-7911, and served to Verizon Wireless. From location data, it was determined that Moorse was residing at the Helena

Airport Inn, 2300 North Oakes Street in Helena, Montana.

12. On January 9, 2025, at approximately 7:45 p.m., Moorse was observed exiting the Helena Airport Inn with an unknown female and getting into a 2009 Gold Saturn, Montana license plate 3-97024D. Moorse and the female left the Helena Airport Inn parking lot in the vehicle and headed westbound towards the downtown Helena area. Surveillance units observed Moorse pull into the parking lot of the Last Chance Casino located at 1001 North Last Chance Gulch in Helena. Moorse got out of the vehicle, opened the trunk, and placed an orange bag in the trunk. The female also got out of the vehicle and placed a bag in the trunk at the same time as Moorse. Moorse shut the trunk, and Moorse and the female walked into the Casino.

13. Moorse was contacted in the casino and advised that he was under arrest on an outstanding warrant. Task Force Officers secured and identified the female as Hannah Jo Gustafson. Drug paraphernalia was found in Gustafson's purse.

14. Moorse stated Gustafson was his girlfriend and she had nothing to do with this. I advised Moorse that his vehicle along with his room at the Helena Airport Inn would be searched by Probation and Parole with the assistance of the MRVCTF. Moorse stated everything in the vehicle and in the room belonged to him.

15. Moorse was placed into my vehicle and transported to the FBI Helena Resident Agency. Moorse was advised that we had probable cause to believe he was involved in the distribution of large quantities of fentanyl in western Montana. I advised of Moorse of his Miranda rights, which Moorse agreed to waive.

16. Moorse stated we would not find any drugs or a gun in his room or his vehicle. Moorse stated he has been renting a room (320) at the Helena Inn for a few weeks. Moorse stated the only items we would find in the room were small amounts of meth residue and paraphernalia. Moorse stated the 2009 Gold Saturn was loaned to him by a friend and that he was working on sending his friend a payment. Moorse admitted to the interviewing Agents that he had a small methamphetamine addiction but stated he never used fentanyl. Moorse adamantly denied that he ever possessed a gun and does not mess with fentanyl. Moorse continued to minimize his involvement in distributing narcotics during the interview. Moorse eventually admitted that he sells one to 10 pills a day to make a little money to buy a few grams of methamphetamine for personal use. Moorse would purchase a pill for $7 and sell a pill for $10. Moorse would not provide his source of supply and continued to deny any involvement in distributing large quantities of drugs.

17. During the interview I was advised by the search team that they located approximately 94 gram of methamphetamine, 106.3 grams (approx. 1,000) fentanyl pills, and 25 grams of fentanyl powder inside the orange bag that Moorse was observed placing into the trunk of his vehicle pictured below.



18.     Moorse admitted the above pictured drugs located in the trunk were his and that he purchased the drugs earlier today. Despite the large quantity of drugs seized, Moorse continued to deny distributing or selling large quantities. However, Moorse did admit to being involved in numerous "small transactions" over the last few days in which he sold fentanyl.

19.     Moorse was asked if Gustafson used and/or distributed fentanyl. Moorse stated Gustafson does not use fentanyl and has only used methamphetamine on a few occasions. I advised Moorse that a few fentanyl pills and powder were located on her person. Moorse opined that Moorse may have grabbed some of his stash to sell on her own without his knowledge. Moorse denied having any knowledge that Gustafson distributed drugs and stated she never distributed drugs at his direction.

20.     Moorse was then shown a picture of two text photos we had received that were reported to be sent by him. Moorse stated the first picture, which depicts a brick of fentanyl, was pulled from the internet. Moorse denied the brick ever being in his possession. Moorse stated he pulled the photo from the internet and sent it to some friends

as a joke. Moorse stated the second photo, depicting a hand holding a bag over a scale and numerous baggies of fentanyl and methamphetamine with one being weighed on the scale is of him. Moorse took the picture and the drugs depicted in the photo were his.

21. I advised Moorse that in my experience, all drug distributors minimize their actions when confronted. I told Moorse he was distributing far more than an average of five fentanyl pills and one-tenth of a gram of fentanyl powder per day. The amount the MRVCTF seized that was in Moorse's possession and the photo of Moorse packaging large quantities of meth and fentanyl is indicative of a drug distributing operation.

22. At the end of the interview, I advised Moorse that he would be transported from Helena to Missoula on the outstanding probation warrant.

23. The drugs and the scale seized from Moorse's vehicle as well as Moorse's cell phone were collected as FBI evidence. The suspected drugs field tested positive for methamphetamine and fentanyl and will be submitted to the DEA lab for analysis.

24. On January 13, 2025, David Alan Moorse was charged per complaint by United States Magistrate Judge John Johnston in United States District Court, District of Montana, for the crimes of Title 21 United States Code, Section 846, Conspiracy to Distribute Controlled Substances, and Title 21 United States Code, Section 841(a)(1), Possession with Intent to Distribute Controlled Substances.

25. Based on my training and experience, I know that drug dealers and those who engage in drug related crimes use their phones to perpetuate their criminal activity, especially if those individuals are travelling out of state to purchase drugs for

redistribution. These text messages and communications remain on a phone unless deleted by the user. Additionally, I know through my training and experience that drug dealers use their phones to coordinate drug deals, meetings, distribution of drugs to others, and to aid in the acquisition of firearms and ammunition for protection during the commission of these crimes. When committing these crimes, including violent crimes, individuals carry their phones with them, meaning the location of the user can be identified based on the phone.

## TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings: wireless telephone, cellular phone, or smartphone. A wireless telephone (or smartphone, mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and

downloading information from the Internet using a browser or other applications. Wireless telephones may also include Global Positioning System ("GPS") technology for determining location of the device.

  a. Based on my training, experience, and research, I know that the device listed in Attachment A, has capabilities that allows it to serve as wireless telephone or smartphone, digital camera, portable media player, GPS navigation device, and a file storage device. In my training and experience, examining data stored on a cellular device can uncover, among other things, evidence that reveals or suggests who possessed the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

  b. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensic tools even if the information is deleted.

  d. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic evidence is on the device listed in Attachment A, because:

e.  Data on storage medium can provide evidence of a file that was once on the storage medium, but has since been deleted or edited, or of a deleted portion of a file.

f.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

g.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## CONCLUSION

25.     Based on the forgoing, I believe there is probable cause to conclude Moorse's cell phone, described as a black Samsung cell phone, with assigned call number (406) 396-7911, contains evidence of federal crimes, including, but not limited to, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, a violation of 21 U.S.C. § 846, and Possession with Intent to Distribute Controlled Substances, a violation of 21 U.S.C. § 841(a)(1).

///

///

///

///

///

///

///

///

///

26.     It is my belief that there is probable cause to believe that a search of the item described in Attachment A will provide evidence of the above crimes, including, but not limited to, location information and records or

communications involved in the commission of the above crimes, as provided in Attachment B.

Respectfully submitted,

*Monte Shaide*

Monte Shaide
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim P. 4.1 by being subscribed electronically and sworn to telephonically on this 27th day of January, 2025.

*John Johnston*

John T. Johnston
United States Magistrate Judge